UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RITCHLET W. VALMORD,

                  Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                    17-CV-5325 (RRM) (JO)

    -against-

ACS/ADMINISTRATION CHILDREN SERVICES,
LILA CESAR, INELISE ETIENNE, JEAN CLAUDE
GAUTHIER, and MARIE KHAN,

                  Defendants.
-------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

        Plaintiff Ritchlet W. Valmord brings this *pro se* action against his former wife, Lila Cesar ("Cesar"), and four other defendants who allegedly helped her obtain full custody of their two children. Although Valmord invokes federal-question jurisdiction, his complaint contains virtually no facts and none which suggest that he is raising any issues of federal law. For the reasons set forth below, the Court grants Valmord's application to proceed *in forma pauperis* for the purpose of this Memorandum and Order but dismisses the action both for lack of subject-matter jurisdiction and for failure to state a claim.

    **I.**    **Background**

        The following facts are drawn from Valmord's complaint (Doc. No. 1) and are assumed to be true for purposes of this Memorandum and Order. Valmord and Cesar – variously identified in the complaint as Lila Cesar, Lila Cesar (Valmord), and Lila C. Valmord (Compl., pp. 1, 2 & 6) – were married for nine years. (*Id.*, p. 5). During that time, they had two children together: a son and a daughter.

The marriage was not a happy one. Valmord now describes it as a "forceful and unconsented marriage relationship," tantamount to "slavery." (*Id.*, p. 5). The complaint does not specifically allege that the two have divorced but does allege that they engaged in a "custody battle" in Kings County Family Court before now-retired Judge Paula J. Hepner. (*Id.*, p. 6).

Judge Hepner awarded full custody of the two children to Cesar, who Valmord characterizes as an "unfit mother." (*Id.*). Thereafter, the children experienced problems. The son dropped out of high school, fathered a child, and was arrested several times during his teenage years. (*Id.*). The daughter was allegedly subjected to sexual, physical, and verbal abuse. (*Id.*). Valmord himself was also adversely affected; he failed to graduate from college, where he was a pre-med student. (*Id.*, p. 5).

In September 2017, Valmord commenced this action against Cesar and four other defendants for their "interference ... within the custody battle." (*Id.*, p. 6). Although Valmord's complaint alleges that defendants Inelise Etienne and Marie Khan are home health aides and that defendant Jean Claude Gauthier is a bus driver, (*id.*, p. 3), the pleading does not allege any specific acts and omissions by these defendants or by defendant ACS – presumably, the New York City Administration for Children's Services. Similarly, although Valmord checked a box on his form complaint to indicate that he is alleging federal-question jurisdiction, Valmord has not completed that portion of the form which prompts him to "[l]ist the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case." (*Id.*, p. 4).

The "Relief" section of the complaint seeks only punitive damages in the amount of $666,666.00. (*Id.*, p. 6). However, other portions of the complaint contain demands for three other forms of relief. First, Valmord requests that his marriage to Cesar be "nullified." (*Id.*,

attachment to p. 5). Second, he demands that Cesar be "punished severely" and that the other individual defendants be jailed and deported from the United States. (*Id.*). Third, Valmord requests that the individual defendants be "called to the Federal Court to be interrogated and psychiatrically evaluated." (*Id.*, p. 5).

### Valmord's Letter

In December 2018, Valmord sent the Court a letter (Doc. No. 4), which expands on some of the allegations in his Complaint. First, he alleges that he is a licensed lawyer in his native Haiti, "practicing periodically Civil Law in [the] Tribunal de Paix." (Letter to Magistrate Judge James Orenstein from Ritchlet W. Valmord, dated Dec. 28, 2018). He also clarifies that the custody battle took place over a decade ago, stating that Judge Hepner granted Cesar full custody of the son and daughter on June 13, 2007, and October 26, 2007. (*Id.*).

There are several attachments to this submission, including a letter dated December 9, 2007, and addressed to the "New York Courts." In that letter, Valmord alleges that Cesar "put magical fluid in food and drink she was serving" him to make him marry her in the first place. (Letter to New York Courts from Ritchlet Valmord dated Dec. 9, 2007, p. 2). He further alleges that Cesar attempted to kill him on January 31, 2007, "with the help of her accomplices, Inelise Etienne ... [and] Jean Claude Gauthier," by somehow arranging for him to have an automobile accident with a fire truck. (*Id.*). When that attempt proved unsuccessful, Cesar and Etienne "sent ... Gauthier to Haiti to do voodoo to kill [him] via telepathy ...." (*Id.*).

### II.  Standard of Review

"[F]ederal courts are under an independent obligation to examine their own jurisdiction." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Thus, "[f]ederal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*, even when the parties do not contest the

3

issue." *F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir.) (quoting *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 756 F.3d 151, 161 (2d Cir. 2014)), *cert. denied*, 138 S. Ct. 473 (2017). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A district court is also required to dismiss an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citations omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

In addition, Rule 8 of the Federal Rules of Civil Procedure requires that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The Rule 8 standard "does not require 'detailed factual allegations,' but ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In reviewing a *pro se* complaint, the Court must be mindful that "the allegations of such a complaint, 'however inartfully pleaded' are held 'to less stringent

4

standards than formal pleadings drafted by lawyers ...." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts are "obligated to construe a *pro se* complaint liberally").

### III.  Discussion

#### A.  Subject-matter Jurisdiction

"The district courts of the United States ... are 'courts of limited jurisdiction.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)); *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015). They "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp.*, 545 U.S. at 552 (citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction ... and the burden of establishing the contrary rests upon the party asserting jurisdiction ...." *Kokkonen*, 511 U.S. at 377 (internal citations omitted).

"In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases – civil actions that arise under the Constitution, laws, or treaties of the United States." *Exxon Mobil Corp.*, 545 U.S. at 552 (citing 28 U.S.C. § 1331). However, "the 'well-pleaded complaint' rule provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003)). In the absence of diversity jurisdiction, if "[t]here is nothing on the face of Plaintiff's Complaint to suggest that Defendant violated any federal statute, or that any question involving the Constitution, laws, or treaties of the United States is at all implicated by his claim," the complaint may be properly dismissed. *Id.* at 467–68; *see Hu Yi Huan v. Prime Food Processing Corp.*, No. 17-CV-3938

(KAM), 2018 WL 3241314, at *1–2 (E.D.N.Y. July 2, 2018) (case may be properly dismissed where a plaintiff failed to state a claim with facts conferring federal question or diversity jurisdiction); *Gray v. Internal Affairs Bureau*, 292 F. Supp. 2d 475, 477 (S.D.N.Y. 2003) (citing Rule 12(h)(3) in holding that the action "must be dismissed" for failure "to allege facts demonstrating that her claims arise under this Court's federal question jurisdiction").

In this case, Valmord has checked a box on his form complaint to indicate that he is invoking federal-question jurisdiction. However, Valmord did not complete that portion of the form which prompted him to "[l]ist the specific federal statute, federal treatises, and/or provisions of the United States Constitution that are at issue in this case." (Compl., p. 4). In addition, the facts alleged in the pleading – that due to unspecified "interference" by the defendants, a Family Court judge awarded custody of Valmord's children to their "unfit mother," rather than to Valmord – do not suggest a basis for federal-question jurisdiction.

### B. Failure to State a Claim

By the same token, Valmord's pleading fails to state a claim. Even if Valmord could allege facts suggesting that the individual defendants violated his federal constitutional or statutory rights during the custody battle, he could not bring a civil rights action against them under 42 U.S.C. § 1983. "To avoid *sua sponte* dismissal of a § 1983 claim, a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation ...." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). Moreover, the statute of limitations applicable to a Section 1983 claim accruing in New York is three years. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).

In this case, there is nothing to suggest that any of the individual defendants are state actors. The ACS might be, but it is not a suable entity. *Worrell v. City of New York*, No. 12-CV-

6151 (MKB), 2014 WL 1224257, at *3 (E.D.N.Y. Mar. 24, 2014) (citing cases); *see* N.Y. City Charter, ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."). In addition, absent some basis for equitable tolling, any claims arising from events that occurred in 2007 would be time-barred. *See Pearl*, 296 F.3d at 79.

### C. Leave to Amend

"Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. 2018) (summary order) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *see Adams v. Horton*, 725 F. App'x 78, 79 (2d Cir. 2018) (summary order). However, "leave to amend should be denied if it would be futile." *Thompson v. Racette*, 519 F. App'x 32, 34 (2d Cir. 2013) (summary order) (citing *Cuoco*, 222 F.3d at 112). The Second Circuit has held that it is permissible to deny leave to amend where the plaintiff has "alleged no factual allegations" and, therefore, offered "no indication that [he] might plead a valid claim." *Hariprasad*, 722 F. App'x at 103 (summary order). The Second Circuit has also upheld the denial of leave to amend where it was clear that the plaintiff was not entitled to the relief sought. *See Wright v. Semple*, 696 F. App'x 540, 542 (2d Cir. 2017) (summary order).

In this case, none of the facts alleged by Valmord offer any "indication that [he] might plead a valid claim" for money damages against any of the defendants. *See Hariprasad*, 722 F. App'x at 103. To the contrary, Valmord's December 2007 letter suggests that he is claiming that Cesar used a "magical fluid" to make him marry her, and later conspired with Etienne and

7

Gauthier to kill him by 1) arranging for him to have an automobile accident with a fire truck and 2) using voodoo to "kill [him] via telepathy." (Letter to N.Y. Courts from Ritchlet Valmord, dated Dec. 7, 2007, p. 2). While these allegations may explain why Valmord is requesting exactly $666,666.00 in punitive damages, they do not suggest a valid federal claim.

In addition, the Court cannot grant any of the non-monetary relief requested in Valmord's complaint. First, the Supreme Court has recognized a "domestic relations exception" which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards,* 504 U.S. 689, 703 (1992). Accordingly, the Court lacks the power to nullify Valmord's marriage.

Second, "in the United States, 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 458 n.4 (2d Cir. 2014) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Since "a private citizen cannot initiate a federal criminal action," a plaintiff "cannot commence a *pro se* criminal case." *Novikova v. IRS*, No. 04-CV-5324 (DLI) (LB), 2007 WL 2891301, at *9 (E.D.N.Y. Sept. 28, 2007); *see Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86 (2d Cir. 1972) ("[I]n our federal system crimes are always prosecuted by the Federal Government.") Absent a prosecution by the Government, the Court cannot punish or deport any of the defendants.

Third, while Rule 35 of the Federal Rules of Civil Procedure "gives a district court power to order mental or physical examinations of a defendant in an appropriate case," *Schlagenhauf v. Holder*, 379 U.S. 104, 110–11 (1964), this is not such a case. Rule 35(a)(1) provides, in pertinent part: "The court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a

suitably licensed or certified examiner." However, such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2). That motion must contain "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Romano v. Levitt*, No. 15-CV-518A, 2017 WL 2544076, at *2 (W.D.N.Y. May 5, 2017) (quoting *Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, 230 (D. Conn. 2001)), *report and recommendation adopted*, No. 15-CV-518A, 2017 WL 2533208 (W.D.N.Y. June 12, 2017).

There is nothing in the complaint to suggest that the mental health of any of the individual defendants is relevant to any legitimate issue before the Court. Rather, it is clear from Valmord's December 2007 letter that Etienne and Gauthier were friends of Cesar who allegedly conspired with her to attempt to murder Valmord. His request that they be subjected to mental examinations appears to be entirely malicious and based on wholly incredible assertions of their use of magical powers against him.

## CONCLUSION

For the reasons stated above, Valmord's complaint, filed *in forma pauperis*, is dismissed for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Leave to amend the complaint is denied as futile. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to enter judgment in favor of defendants and against Valmord and to close this case.

The Clerk of Court is also directed to mail a copy of this Memorandum and Order to Valmord and to note the mailing on the docket.

                                                SO ORDERED.

Dated: Brooklyn, New York
       Jan 30, 2019             s/ Roslynn R. Mauskopf

                                       ROSLYNN R. MAUSKOPF
                                       United States District Judge